## SWISS BANKVEREIN v. ZIMMERMANN et al.

(Circuit Court of Appeals, Second Circuit. February 6, 1917.)

### No. 103.

1. TRIAL ⬦⟳142—QUESTIONS FOR JURY—INFERENCES FROM WRITINGS.

Where, from numerous letters and cable messages exchanged between the parties, different inferences might be drawn as to whether the original instructions to defendant to apply the proceeds of drafts indorsed by plaintiff to the payment of sight drafts in plaintiff's favor had been modified, so as to authorize defendant to credit the proceeds of the indorsed drafts to the general account of the drawer of the sight drafts, and there was a dispute as to whether plaintiff's agent told the defendant, before the last instructions had been received, that the sight drafts had been returned, the question was for the jury, and not for the court.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 337.]

2. EVIDENCE ⬦⟳275—DECLARATIONS OF AGENT—KNOWLEDGE OF PRINCIPAL.

Where defendant had received drafts indorsed by plaintiff, with instructions to apply the proceeds to the payment of sight drafts drawn by plaintiff, but refused to accept the former because they were indorsed by plaintiff without recourse, in determining whether the subsequent correspondence between the parties, as result of which drafts indorsed by plaintiff

---

⬦⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

without restriction were sent to defendant, modified the original instructions, so as to authorize defendant to credit the proceeds of the new drafts to the general account of the drawer, instead of to the payment of the sight drafts, a statement by plaintiff's agent, who presented the sight drafts, that they had been returned to plaintiff, can be considered, though it was not known to plaintiff.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 1057.]

3. APPEAL AND ERROR ⬤719(5)—QUESTIONS PRESENTED—ERROR NOT ASSIGNED—"PLAIN ERROR."

Error in excluding that statement from the jury's consideration, unless it was known to plaintiff, was a "plain error," which the Circuit Court of Appeals can notice without assignment, under Circuit Court of Appeals, Second Circuit, Rule 11 (150 Fed. xxvii, 79 C. C. A. xxvii), especially where it was fully presented to and considered by the trial court.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2974, 3490.]

4. TROVER AND CONVERSION ⬤22—PROCEEDS OF DRAFT—LIABILITIES OF PARTY.

Plaintiff's claim against defendant for the conversion of funds remitted to cover a sight draft, and against the drawer of the sight draft, are different claims, not creating the relation of principal and surety between defendant and the drawer of the drafts, so that a receipt in settlement of the latter claim is no defense to an action on the former.

[Ed. Note.—For other cases, see Trover and Conversion, Cent. Dig. §§ 152–162, 167–169.]

In Error to the District Court of the United States for the Southern District of New York.

Action by Leopold Zimmermann and others against the Swiss Bankverein. Judgment for plaintiffs, and defendant brings error. Reversed, and remanded for new trial.

Alexander & Green, of New York City (Charles W. Pierson and Campbell Locke, both of New York City, of counsel), for plaintiff in error.

Engelhard & Pollak, of New York City (Walter H. Pollak, of New York City, of counsel), for defendants in error.

Before WARD, ROGERS and HOUGH, Circuit Judges.

WARD, Circuit Judge. This is an action treated in the court below as brought by Zimmermann & Forshay, bankers of New York City, against the Swiss Bankverein of London, to recover damages for the conversion of five French drafts, the property of the plaintiffs, on the Banque Franco-Americaine of Paris, for 25,000 francs each, dated February 15, 1910, and payable 90 days after acceptance. It arose out of the following facts:

February 21, 1910, Uhlfelder, Thompson & Co., in New York, wrote to the defendant, Swiss Bankverein, in London, England, the following letter:

"Swiss Bankverein, London, E. C., England—Dear Sirs: We beg to advise that we are remitting you through Messrs. Zimmermann & Forshay Fcs. 125,000 90 days sight, drawn on the French-American, Paris, which please sell at best unless we arrange otherwise by cable. Please note that we have

drawn against this remittance £4,927-/- to the order of Messrs. Zimmermann & Forshay, which please honor on presentation. The first of these bills have been sent for acceptance to the drawees.

"Yours truly,             Uhlfelder, Thompson & Co.

"D. GG. Levieh.

"P. S. Since the above-mentioned draft has been accepted as under date of February 28th you will have to allow us interest for the days run off."

March 7, 1910, the defendant, Swiss Bankverein, wrote to Messrs. Uhlfelder, Thompson & Co. the following letter:

"Messrs. Uhlfelder, Thompson & Co., New York—Dear Sirs: We duly received your favor of the 21st ulto., and as advised, have received bills for Fcs. 125,000 90 d/s. on Paris, against which you have drawn on us check for £4,927. This latter check was presented to us by the London County & Westminster Bank, with the above drafts attached. As these drafts were indorsed by Messrs. Zimmermann & Forshay 'without recourse,' we regret that we were unable to negotiate them, and must ask you to consult us in future when intending to send us such remittances. We cabled you on Saturday: 'With reference your letter dated 21st Feb., cannot negotiate indorsed by without recourse,' which we hereby confirm, and in reply thereto you cabled us: 'Zimmermann & Forshay are withdrawing "without recourse" pay draft.' To which we replied: 'Will pay after have received for. your account properly indorsed drafts,' which we also beg to confirm,

"Swiss Bankverein.

"X. Castelli."

March 7, 1910, the defendant sent to Uhlfelder, Thompson & Co. the following cablegram:

"Will pay after have received for your account properly indorsed drafts."

March 5, 1910, the plaintiffs, Zimmermann & Forshay, sent to the defendant the following cablegram:

"We withdraw our mention 'without recourse' one hundred twenty-five thousand (125,000) francs Paris, will send next week properly indorsed copies."

March 8, 1910, Zimmermann & Forshay wrote to the defendant the following letter, received by the defendant March 19, 1910:

"Swiss Bankverein, London—Dear Sirs: With reference to Messrs. Uhlfelder, Thompson & Co.'s draft for £4927 on your good selves, which was refused payment for the reason, 'Refer to drawer,' we, after having communicated with the drawers, cabled you on the 5th inst., as follows: 'We withdraw our mention "without recourse" one hundred twenty-five thousand (125,000) francs Paris, will send next week properly indorsed copies,' which we hereby confirm. We inclose herewith five (5) thirds of exchange of twenty-five thousand (25,000) francs, each, at ninety (90) days' sight on the Banque Franco-Americaine, Paris, regularly indorsed by us. We trust that this will place the matter in order.

"Yours very truly,             Zimmermann & Forshay."

March 9, 1910, the plaintiffs wrote to the defendant the following letter:

"Swiss Bankverein, London—Dear Sirs: With reference to our letter of yesterday we beg to inform you that we expected to receive the third of exchange in time to mail them for the S/S Lusitania, but owing to one of the officers of the company who issued these drafts being out of town, we were unable to do so. We, therefore, inclose them herewith, together with our said letter of yesterday.

"Yours very truly,             Zimmermann & Forshay."

March 19, 1910, the defendant sent to Uhlfelder, Thompson & Co. the following cablegram:

"Have received from Zimmermann Fcs. 125,000 Frambani—are awaiting instructions."

March 21, 1910, Uhlfelder, Thompson & Co. sent to the defendant the following cablegram, which was received by defendant on the same day:

"Please credit our account for francs."

March 21, 1910, the defendant sent to Uhlfelder, Thompson & Co. the following cablegram, which was received by them on the same day:

"F. 125,000 Indorsed by Zimmermann & Forshay. Cannot negotiate for your a/c unless instructed.                    Zimmermann & Forshay."

March 21, 1910, the plaintiffs sent to the defendant the following cablegram, which was received by defendant on the same day:

"Refer to our letter of the 8th inst., credit account of Tomebell (i. e. Uhlfelder, Thompson & Co.) proceeds Fcs. 125,000."

March 22, 1910, the plaintiffs wrote to the defendant the following letter, which was received by the defendant March 29, 1910:

"Swiss Bankverein, London—Dear Sirs: We beg to inform you that upon the request of Messrs. Uhlfelder, Thompson & Co., of this city, we cabled you yesterday, as follows: 'Refer to our letter of the 8th inst., credit account of Tomebell proceeds Fcs. 125,000,' which we hereby confirm, and trust that the matter will now be in order.
"Yours very truly,                    Zimmermann & Forshay."

April 18, 1910, Uhlfelder, Thompson & Co. sent to the defendant the following cablegram:

"Refer to your letter of 7th March. Have you paid our draft for £4000 £900 27 Zimmermann & Forshay claim unpaid. Why unpaid? Telegraph immediately."

April 19, 1910, the defendant sent to Uhlfelder, Thompson & Co. the following cablegram:

"Drafts not re-presented."

April 19, 1910, Uhlfelder, Thompson & Co. sent to the defendant the following cablegram:

"Refer to your telegram of 19th take up draft from L'don Cty & Westminster Bk."

April 19, 1910, the defendant sent to Uhlfelder, Thompson & Co. the following cablegram:

"Cable received, we reply that your credit balance is £1,600, remit by telegraph."

April 20, 1910, Uhlfelder, Thompson & Co. sent to the defendant the following cablegram:

"Pay London County & Westminster Bank, Ltd., for account of Zimmermann & Forshay, New York, about balance of account. Telegraph amount—send statement of account."

April 20, 1910, the defendant sent to Uhlfelder, Thompson & Co. the following cablegram:

"Refer to your telegram of 20th. Have paid London County £2,000."

All the foregoing facts are stipulated, and we come now to a further fact which is disputed. The Swiss Bank says that upon receipt of the thirds of exchange of the French drafts March 19th, and before it cabled to New York for instructions, it applied to the London County & Westminster Bank to re-present the sight draft and were answered that it had gone back to New York. The plaintiffs deny this. There is no evidence whatever of bad faith on the part of either the Swiss Bank or Zimmermann & Forshay, and we think there is none on the part of Uhlfelder, Thompson & Co. Zimmermann & Forshay did not actually intend that the proceeds of the French drafts should be applied to the general credit of Uhlfelder, Thompson & Co., although it could well be found that the Swiss Bank did so, supposing that such was the intention of Zimmermann & Forshay.

The complaint is capable of being read either as for breach of the Swiss Bank's promise to accept the sight draft upon receiving the French drafts with an unrestricted indorsement or as for damages for conversion of the drafts. The trial judge submitted the cause to the jury as one for conversion; that is, for payment by the Swiss Bank of the proceeds of the French drafts belonging to the plaintiffs to Uhlfelder, Thompson & Co. without authority and in violation of the bank's implied contract to return the drafts to the plaintiffs if it did not pay the sight draft. We think the liability of the defendant in either case would be the same. Its defense does not depend directly upon negligence of the plaintiffs, but upon the proposition that, whether they intended to do so or not, they did, by their written communications and their conduct, change the original understanding as to the French drafts and direct the defendant to pay over their proceeds to the general credit of Uhlfelder, Thompson & Co. Obviously, if this is made out, there can be no liability upon the defendant to pay over again.

[1] The plaintiffs contend that on the foregoing state of facts, the trial judge could rightly have directed the verdict in their favor. We do not concur in this at all. The French drafts were the property of Zimmermann & Forshay and indorsed by them. They, as well as Uhlfelder, Thompson & Co., intended them to protect the Swiss Bank in paying Zimmermann & Forshay's sight draft. Unquestionably this was the understanding at first of all parties. The proceedings, however, were dislocated by the protest of the sight draft after the refusal of the Swiss Bank to pay the same when presented. Then followed a situation which could not be disposed of by the court as matter of law. It became a question of fact whether the effect of the acts and writings of Zimmermann & Forshay and their agent, the London County & Westminster Bank, subsequent to the protest of the sight draft, changed the original understanding and constituted a direction to the Swiss Bank to give Uhlfelder, Thompson & Co. general credit for the proceeds of the French drafts. And because different inferences

might be drawn, even from the writings, the question was one, not for the court, but for the jury. Zimmermann & Forshay's actual intention was not as important as was the intention they expressed to the Swiss Bank by what they wrote and did.

[2] A most material and significant fact, if the jury found it to be such, was the statement of Zimmermann & Forshay's agent, the London County & Westminster Bank, when the Swiss Bank asked it to re-present the draft, that it had gone back to New York. The fact that the thirds of exchange had come direct from Zimmermann & Forshay to the bank, instead of through the London County & Westminster Bank, was quite consistent with the truth of this answer. A jury might hold that the Swiss Bank had a right to infer that there was no intention to re-present the sight draft and that Zimmermann & Forshay and Uhlfelder, Thompson & Co. had settled all matters between them.

But the trial judge instructed the jury that this statement of the London County & Westminster Bank to the Swiss Bank, even if made, was not to be considered by them at all, unless Zimmermann & Forshay had actual knowledge that the London County & Westminster Bank had made it. This was in our opinion error. In a legal sense the situation was just the same as if the Swiss Bank by cable had put the question of re-presenting the sight draft to Zimmermann & Forshay, and they had replied that it was in New York. If thereupon the Swiss Bank had asked what it was to do with reference to the French drafts, and Zimmermann & Forshay had answered, "Credit Uhlfelder, Thompson & Co.'s account with them," many persons would find that they had changed the original understanding, whether they intended to do so or not.

[3] The error as to the effect to be given to the statement of the London County & Westminster Bank that the sight draft had been returned to New York was expressly raised by the defendant's exception as follows:

"I also except to your honor's charge to the effect that the plaintiffs were only chargeable with what they actually knew, and not with what their agent, the London County & Westminster Bank, over in London, knew or did, unless it had actually been communicated to them."

This appears not to have been assigned as error, but we have a right under our rule 11 (150 Fed. xxvii, 79 C. C. A. xxvii) to "notice a plain error not assigned," and we have less hesitation in doing so because the question was fully presented to and considered by the trial judge.

[4] In view of the new trial that is to be ordered, it is proper for us to say that Zimmermann & Forshay's receipt in settlement of their claim to Uhlfelder, Thompson & Co. for their notes is no defense to the Swiss Bank. The relation of principal and surety did not exist between Uhlfelder, Thompson & Co. and the bank, and Zimmermann & Forshay's claims against them, respectively, were different, viz., against the Swiss Bank for conversion, and against Uhlfelder, Thompson & Co. on their sight draft.

The judgment is reversed.